# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

2007-SC-000277-TG

DATE 9-11-08 EhAGrouh,D.C.

GLYNDON EATON      APPELLANT

V.      ON APPEAL FROM MADISON CIRCUIT COURT
HONORABLE JULIA HYLTON ADAMS, JUDGE
NO. 05-CR-000144

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, Glyndon Eaton, was found guilty of one count of kidnapping, one count of assault in the second-degree, two counts of rape in the first-degree and two counts of sodomy in the first-degree by a Madison Circuit Court jury and was sentenced to twenty (20) years imprisonment. Appellant now appeals his conviction as a matter of right, pursuant to Kentucky Constitution § 110(2)(b), citing as error the trial court's refusal to instruct the jury as to the lesser-included offenses of sexual abuse, attempted rape and attempted sodomy. For the reasons set forth below, we affirm.

## I. BACKGROUND

In October of 2004, Appellant and his wife, Keena Morris, decided to separate after seventeen years of marriage. Following their separation, Appellant began to harass Morris, calling her home and driving past her parents'

residence in an attempt to locate her. Morris eventually returned to Appellant's home three to four days after the initial separation in an attempt at reconciliation. However, after a brief period of improvement, the situation inside the home worsened as Appellant became paranoid and overly suspicious. Morris subsequently left for a second time after the holidays in February of 2005, moving into her parents' home. It was after this move that Appellant's behavior toward Morris became increasingly violent and threatening. By all accounts, Appellant also became verbally abusive during this period. Testimony indicated that Appellant contacted Morris and stated that he would place her family members' names in a hat and draw them out, killing each of them as he did so.

On the day before the alleged beating and rape occurred, Appellant again phoned and threatened Morris. Tragically, the following morning Appellant made good on his threats and carried out the attack. Appellant went to Morris' residence and lay in wait near her driveway in the early morning hours. As Morris was leaving for work, Appellant sprang upon her, tackling her to the ground and held a knife to her neck. Appellant made a cut on her neck with the knife, threatened to cut her head off, and forced her into her car, driving her vehicle to his home where he then threw her in his bathroom. While being held at Appellant's residence, Morris managed to contact her mother by cell phone and told her to call the police. Shortly thereafter Appellant kicked in the door to the bathroom, struck her with his fist, and took her back to the car. Appellant then drove to a secluded area of the woods, forced Morris out of the car, and slashed the tires of the vehicle, whereupon the assault continued. Appellant then proceeded to violently remove her clothing with the knife. As he did so, Appellant

2

used the knife to cut off the victim's hair because "everyone thought it was beautiful." Appellant told Morris that his brother had gone to her parents' home to kill them.

Morris testified that Appellant beat her viciously with his fists and gun, threw her on top of the car, removed her tampon (Morris was menstruating at the time), then vaginally and anally raped her with his penis and again with the barrel of his gun, and forced her to perform oral sex on him. Thereafter, Appellant continued beating and kicking Morris, causing significant injuries to the head, mouth, and face. Appellant then directed the victim further into the woods and threw away the car keys. Appellant then told Morris that he was going to kill her before anyone could find her. Appellant again began to savagely beat her, forced her to lie down on the ground and, for a second time raped and sodomized her. Following this, Appellant forced Morris to perform oral sex on him while continuing to beat her with the pistol. Morris testified that Appellant never ejaculated.

Eventually, the victim was released and made her way to a nearby home in the area where the occupant called 911 and she was subsequently taken to Berea hospital for treatment. After a rape kit was performed, Morris was transferred to the University of Kentucky Hospital for further treatment due to the severity of her wounds and the extensive damage to her face and mouth. One of the attending doctors who examined Morris at Berea Hospital stated that it was the second worst case of injuries he had ever encountered.

Overall, sixteen swabs were taken during her examination and treatment. There was no semen, pubic hair, or DNA found on the swabs, nor any signs of

3

trauma inside the vagina. However, the examining doctors found dirt, debris, and leaves inside the vagina, as well as mud, leaves and debris covering the perineum and apparent plant material inside the anus. Bridget Holbrook, a forensic biologist for the Kentucky State Police Forensic Laboratory, testified that she had found Morris' DNA mixed with Appellant's on a shoe recovered from his home.

## II. ANALYSIS

Appellant contends that due to an alleged lack of physical and DNA evidence, the jury could have reasonably concluded that he committed the lesser-included offenses of attempted rape, attempted sodomy, and sexual abuse. At trial, Appellant requested such instructions be given, but the trial court ruled that evidence was not presented to support them. Appellant argues that the trial court's failure to include these lesser-included offense instructions resulted in substantial prejudice and reversible error. We disagree.

While it is well-settled that the trial judge is under a duty to instruct the jury on "the whole law of the case," including instructions "applicable to every state of the case deducible or supported to any extent by the testimony," Williams v. Commonwealth, 208 S.W.3d 881, 883 (Ky. 2006), a trial judge's duty to include instructions on any lesser included offense ceases at the point when a theory has "no evidentiary foundation." Houston v. Commonwealth, 975 S.W.2d 925, 929 (Ky. 1998). A determination of what issues to submit to the jury should be based on the totality of the circumstances. Commonwealth v. Collins, 821 S.W.2d 488, 491 (Ky. 1991) (quoting Rice v. Commonwealth, 472 S.W.2d 512 (Ky. 1971)). Lesser-included offenses should only be given when a reasonable inference can

4

be drawn from the evidence that the defendant could be guilty of the lesser offense. Little v. Commonwealth, 424 S.W.2d 819, 821 (Ky. 1967). Moreover, we have held that lesser-included offenses are appropriate only when a reasonable juror could afford the defendant reasonable doubt as to the greater offense, yet believe beyond a reasonable doubt that he was guilty of the lesser offense. Isaacs v. Commonwealth, 553 S.W.2d 843, 844 (Ky. 1977); Houston, 975 S.W.2d at 929.

Here, Appellant's entire argument rests on the premise that the rape and sodomy allegations were fabricated and the absence of physical trauma to the sex organs and the lack of semen necessitate the inclusion of instructions for the lesser-included offenses of sexual abuse, attempted rape, and attempted sodomy. Appellant points to the fact that there was no trauma found inside the vagina, nor was semen or pubic hair found. These facts, however, are not viewed in isolation, nor are they dispositive, as we are bound to consider them under the totality of the circumstances – not in a vacuum. See Collins, 821 S.W.3d at 491.

In the present instance, under the totality of the circumstances, there is but one reasonable conclusion that may be drawn from the corroborating evidence: namely that Appellant's contention that the rape and sodomy were fabricated and that the evidence supports the possibility that Appellant may have attempted sexual intercourse without penetration, simply has no evidentiary foundation. When investigators searched the scene of the rape they discovered Morris' car located in the woods with the tires slashed and her blood inside. Additionally, scratch marks were found on the hood, where Morris claimed the

5

initial rape and sodomy occurred. Moreover, Morris' hair and tampon were found located beside the automobile.

The second instance of rape and sodomy took place in the woods as Morris lay on the ground. Of significant import, testimony indicated that a substantial amount of plant matter, dirt, leaves, and debris were located *inside* of the anus and vagina. Thus, we are of the opinion that the only reasonable inference which can be drawn to explain its presence is that penetration occurred causing the contamination.

Notably, Appellant offers absolutely no evidence or alternative theory to explain the presence of the debris and plant matter inside the victim's anus and vagina. Instead, Appellant relies solely on the lack of physical trauma to the sex organs. However, the Commonwealth presented ample testimony at trial to the effect that trauma does not occur in all incidences of rape.

In Isaacs, a rape case similar to the present instance, we determined that when the only reasonable inference that can be drawn from the evidence is that penetration occurred, an instruction on the lesser-included offense of sexual abuse was not warranted. See 553 S.W.2d at 844. Finding the presence of a small laceration on the vaginal wall, we concluded that lesser-included sexual abuse instructions were not warranted because there existed no reasonable inference that could be drawn from the evidence which would allow a juror reasonable doubt that the presence of the tear was caused by anything other than "a man's penis or some other instrumentality." Id. Here, it is manifestly evident that the presence of dirt, debris and plant matter in the victim's anus and vagina could not have been caused by anything other than penetration. Id.

6

Thus, we likewise find, from the totality of the circumstances before us, and given the formidable weight of corroborating evidence against Appellant, that no reasonable inference can be drawn from the evidence to support instruction on the lesser-included offenses, as penetration undoubtedly occurred. No reasonable juror, considering the evidence as a whole, could have concluded beyond a reasonable doubt that the presence of the leaves, mud, dirt, and debris inside the anus and vagina was not caused by penetration. As such, the trial judge was under no duty to instruct on the lesser included offenses. See Houston, 975 S.W.2d at 929.

### III. CONCLUSION

Accordingly, finding no error and for the reasons set forth herein, we hereby affirm the sentence and convictions of the trial court.

Minton, C.J., Abramson, Cunningham, Noble, Schroder and Scott, JJ., concur. Venters, J., not sitting.

COUNSEL FOR APPELLANT:

Euva D. May
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Joshua D. Farley
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601